[Nos. D043024, D043187. Fourth Dist., Div. One. May 14, 2004.]

CITIZENS FOR IMPROVED SORRENTO ACCESS, INC. et al., Plaintiffs and Appellants, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, and IV.

810

## COUNSEL

Hecht, Solberg, Robinson, Goldberg & Bagley, Richard A. Schulman and Michelle L. Gierke for Plaintiffs and Appellants.

Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, and William S. Donnell, Deputy City Attorney, for Defendant and Respondent.

OPINION

HALLER, J.—Citizens For Improved Sorrento Access, Inc. and several individuals (collectively CISA) brought two actions against the City of San Diego (City) challenging the City's decision to close a portion of a public street to vehicular traffic. The superior court found in City's favor in both of these lawsuits. CISA appeals from both judgments. CISA's main appellate contention is that the City had no discretion to close the road because a substantial number of drivers would use the road if it remained open. In the published portion of this opinion, we reject this contention and hold the City had the authority to close the road based on its legislative determination the road was no longer necessary for vehicular traffic. In the unpublished portion, we reject CISA's challenges to the City's related certification of the environmental impact report (EIR) and amendment of its general plan. We affirm the judgments.

FACTUAL AND PROCEDURAL SUMMARY

Sorrento Valley Road is located near the intersection of Interstate 5 (I-5) and Interstate 805 (I-805). In late 1995, Caltrans closed a one-mile portion of Sorrento Valley Road to permit nearby construction of State Route 56 near I-5.[1] The closed portion of Sorrento Valley Road runs parallel to, and west of, I-5 from Carmel Mountain Road to Carmel Valley Road, and borders the Los Peñasquitos Lagoon, a sensitive natural preserve.

Two years later, individuals began requesting the City to reopen Sorrento Valley Road because the State Route 56 construction was complete. In 2000, CISA filed a writ petition in superior court seeking to compel the City to reopen the road. While that writ petition was pending, the City prepared plans to reopen the road with minor improvements. However, during the plan review process, the California Coastal Commission determined that a coastal development permit was required and the City concluded that an EIR was necessary.

The City staff thereafter prepared an EIR for the proposed reopening of Sorrento Valley Road (the 2000 EIR). The 2000 EIR found that reopening the road would result in many significant detrimental environmental impacts to water, drainage, biological resources, noise, and landform, and that these "impacts, while mitigable, would irreversibly change the character of the environment." The 2000 EIR also found that one of the proposed alternatives, the permanent closure of the road, "would result in the least environmental impacts, while fulfilling some of the project objectives and goals."

---

[1] All further references to Sorrento Valley Road are to this one-mile portion of the road.

During consideration of this EIR at a March 2001 city council hearing, several city council members questioned whether reopening Sorrento Valley Road was necessary given that many alternative roads exist in the same basic location and that an additional traffic study presented to the city council showed that opening the road would not reduce traffic congestion in the area. After consideration of these and other factors, the city council ultimately voted not to certify the EIR or approve the reopening of the road. The city council instead directed City staff to study redeveloping the street primarily as a recreational amenity for pedestrians/bicycles or for limited one-way vehicular access with a pedestrian and bicycle pathway. The city council further directed the city manager to return to the city council with an action to amend the local land use plan to delete this portion of Sorrento Valley Road from the traffic circulation system and to prepare other necessary findings, including compliance with the requirements of the Vehicle Code and Streets and Highways Code for closing a public street.

The City thereafter formed a task force to study the proposed road closure and to develop recommendations for the use of the road. The City staff prepared an EIR that studied the potential impacts from permanently closing Sorrento Valley Road and compared these impacts with the potential impacts from reopening the road with and without safety improvements. This final 2002 EIR concluded that the proposed exclusive pedestrian trail/bicycle use would result in the least environmentally significant detrimental impacts while fulfilling the project objectives and goals. The 2002 EIR noted that each of the project alternatives (opening or permanently closing the road) would have traffic impacts, some of which could not be mitigated.

In January 2003, the City's planning commission held a public hearing and, based on the evidence presented, voted to recommend to the city council the approval of the road closure for exclusive pedestrian/bicycle use and the related EIR certification and plan amendments.

The next month, in February 2003, the city council held a public hearing at which interested individuals, including CISA's counsel, were given the opportunity to state their support for, or opposition to, the proposed road closure and to explain the basis for these positions. The thrust of CISA's position was that the city council had no legal authority to keep Sorrento Valley Road closed because the 2000 EIR found that at least 16,000 people would drive on the road if it were reopened. The road closure proponents countered that the road was no longer necessary based on evidence showing there were numerous alternatives to Sorrento Valley Road, traffic circulation actually improved after closing Sorrento Valley Road (and opening two nearby roads—Carmel Mountain Road and El Camino Real), and opening Sorrento Valley Road would not relieve traffic congestion in the I-5/I-805 merge area.

After considering each of these arguments, the city council voted to certify the 2002 EIR, approve the closing of Sorrento Valley Road for vehicles, and amend the local land use plan to permit this road to be used exclusively by pedestrians and bicyclists. With respect to the road closure, the city council made a specific finding that "there is no present or prospective public use" for Sorrento Valley Road, citing the evidence showing road improvements and other transportation options in the area provided sufficient alternatives to make the road unnecessary for present or future vehicle traffic. The city council further found the road closure was in the public interest because it would substantially increase environmental protection and public recreational opportunities at the Los Peñasquitos Lagoon.

Instead of amending its first writ petition, which was still pending in the superior court, CISA filed a second writ petition and complaint against the City, challenging the city council's February 2003 resolutions and seeking declaratory relief and monetary damages. The parties submitted a lengthy administrative record, including transcripts of the relevant planning commission and city council hearings, and the 2000 and 2002 draft and final EIR's. After considering these materials and counsels' arguments, the superior court (Judge Peterson) found the City acted within its authority to close the road and amend the local plan and these decisions were supported by substantial evidence in the administrative record. The court further found the 2002 EIR was "adequate in that it contains sufficient information to inform the decision makers of the task before them." The court thus entered a judgment in the City's favor. Based on this judgment, Judge Quinn, who was presiding over the earlier writ petition, entered judgment against CISA on the original writ petition.

## DISCUSSION

### I. *Street Closure*

CISA's primary contention on appeal is that the City had no authority to permanently close Sorrento Valley Road.

A city may close a public street by resolution of its legislative body, after a noticed vacation hearing, upon a finding that the street is no longer necessary. (Sts. & Hy. Code, § 8320 et seq., Veh. Code, § 21101, subd. (a)(1).) Two code sections identify the specific findings that must be made before an existing street may be closed to vehicular traffic on the basis that it is unnecessary. First, Streets and Highways Code section 8324, subdivision (b) provides: "[i]f the legislative body finds, from all the evidence submitted, that the street, highway or public service easement . . . is unnecessary for present or prospective public use, the legislative body may

adopt a resolution vacating the street, highway, or public service easement." Vehicle Code section 21101, subdivision (a)(1) similarly provides that "Local authorities . . . may adopt rules and regulations by ordinance or resolution . . . [¶] [to] [c]los[e] any highway [defined to include a street] to vehicular traffic when, in the opinion of the legislative body having jurisdiction, the highway is . . . [¶] [n]o longer needed for vehicular traffic."[2] (See Veh. Code, § 360.)

■ Our review of a legislative determination that a street is "unnecessary" and/or "no longer needed" is highly deferential, governed by the standards set forth in Code of Civil Procedure section 1085. (*Heist, supra,* 163 Cal.App.3d at pp. 845–848; see *City of Lafayette v. County of Contra Costa* (1979) 91 Cal.App.3d 749, 757 [154 Cal.Rptr. 374] (*Lafayette*).) Under these standards, " 'review is limited to an inquiry into whether the action was arbitrary, capricious or entirely lacking in evidentiary support. [Citation.]' [Citation.]" (*Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303 [53 Cal.Rptr.2d 355]; see *Heist, supra,* 163 Cal.App.3d at p. 846.) The petitioner has the burden of proof to show that the decision is unreasonable or invalid as a matter of law. (*Mike Moore's 24-Hour Towing, supra,* at p. 1306.) We review the record de novo except where the trial court made foundational factual findings, which are binding on appeal if supported by substantial evidence.[3] (*Ibid.*)

Under these standards, the City's determination that Sorrento Valley Road was no longer necessary was supported by the record. The evidence showed Sorrento Valley Road had been used primarily as an alternative to the I-5, but that during the time the road was closed the I-5 had been improved and this freeway is being widened with 10 additional lanes, for a total of 24 lanes. The record additionally showed there were plans to construct the nearby Carmel Mountain Road interchange at the I-5 during 2004 through 2007 and a parallel road on the east side of I-5 had been built, making it unnecessary to continue to provide a parallel road on the west side of I-5. The city council

[2] In addition to these statutory requirements, the courts have held the closure of a public road must be in the "public interest." (See *Heist v. County of Colusa* (1984) 163 Cal.App.3d 841, 849 [213 Cal.Rptr. 278] (*Heist*).) CISA does not challenge the sufficiency of the evidence supporting the City's finding that the street closure was in the public interest.

[3] Relying on *City of Rancho Palos Verdes v. City Council* (1976) 59 Cal.App.3d 869 [129 Cal.Rptr. 173], CISA argues that the city council's determinations were quasi-judicial and therefore governed by the review standard in Code of Civil Procedure section 1094.5. However, we agree with the *Heist* court that the *Rancho Palos Verdes* court placed improper emphasis on the fact that the trial court was responding to a specific petition by individual parties. (*Heist, supra,* 163 Cal.App.3d at pp. 846–847.) The fact that a local entity conducts a hearing at which evidence is presented "does not detract from the [fundamental] legislative nature of the action." (*Id.* at p. 846.) Further, even under *Rancho Palos Verdes*'s analysis, the "dominant concern" of the city council's action in this case was public rather than private, and therefore the action must be viewed as legislative in character. (*Rancho Palos Verdes, supra,* at p. 885.)

further found that the "five year, five million dollar Transportation Demand Management Program" in Sorrento Valley will reduce the demand for highways and streets in the area. The transcript of the city council hearings shows that the mayor and the city council majority were specifically persuaded by this evidence to conclude that the street was unnecessary under the applicable statutory standards. Although these public officials recognized that the I-5/I-805 merge area continues to be congested, they found that the reopening of Sorrento Valley Road would not relieve this congestion or provide a necessary transportation alternative for the public.

■ Reviewing the record as a whole, we cannot say the City acted in an arbitrary or capricious manner in making these policy determinations based on the facts before it. The existence of conflicting evidence is insufficient to undermine our conclusion that the City's findings were supported. The city council acted within its legislative function when it weighed the conflicting evidence and determined that Sorrento Valley Road is unnecessary for present or prospective public street purposes and no longer needed for vehicular traffic under the applicable code sections. (See *Heist, supra*, 163 Cal.App.4th at p. 848.)

CISA's main argument to the contrary is based on the undisputed fact that if Sorrento Valley Road were to be reopened, many drivers would elect to use the road. In support, CISA directs us to the portion of the record showing that 14,000 cars daily used Sorrento Valley Road before the street was closed, and that an estimated 16,000 to 17,000 vehicles would use the road on a daily basis if the road were reopened. Based on these facts, CISA argues the City's finding that the road was unnecessary was arbitrary and capricious as a matter of law.

The propriety of this argument depends on how the statutory terms "unnecessary" and "[n]o longer needed" are defined. (Sts. & Hy. Code, § 8324, subd. (b); Veh. Code, § 21101, subd. (a)(1).) CISA equates these terms with the concepts of "use" and "demand," arguing that if people *want* to *use* a street it must be *necessary*. Under these asserted definitions, CISA contends that a local entity may close a public street "*only if* no one wants to drive" on the road, i.e., there is "*no*" demand for the street. CISA thus says that "[a]ll that matters under the law is whether people want to use" the road, and if people *do* "want" to use the road, then a city has no discretion to close it.

These proposed definitions are not supported by the language of the applicable statutes. Under its plain meaning, the word "unnecessary" connotes something that is not "essential" or "needed for the continuing existence or functioning of something." (American Heritage Dict. (college ed.

1981) p. 877, col. 2; see also Random House Unabridged Dict. (2d ed. 1993), pp. 1283–1284 [defining "necessary" as "being essential, indispensable, or requisite"].) Similarly, if something is not "needed" by the public, this condition means that it is *not required*, which is different from stating that the item is not *wanted* or *desired* by individual citizens. These definitions are consistent with the statutory language providing that it is the "opinion" of the legislative body that determines whether a road is [n]o longer needed for vehicular traffic. (Veh. Code, § 21101, subd. (a)(1).) The word opinion implies that the Legislature intended to provide the local legislative body with substantial discretionary authority to determine whether, in its policy judgment, a road continues to be necessary for traffic circulation purposes.

■ Under these definitions, the fact that a substantial portion of the public would *like* to have a road reopened or would *use* the road, does not mean the Legislature is legally precluded from finding the road is not necessary because another road provides equivalent benefits. CISA argues that "[i]f 16,000 people want to drive on a road each day, there is no reasonable basis for a decision that the road has no use." In asserting this argument, CISA ignores the crucial words "unnecessary" and "[n]o longer needed" in the statutes. CISA's proposed interpretation improperly rewrites the statute to say that a street may be closed only if it will "no longer be *used*."

Moreover, we must construe a statute in a manner that "comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) If a legislative finding that a road is unnecessary could be defeated by a showing that people would "use" the road, a legislative determination to close a road would be nearly impossible to uphold. As the road closure proponents explained during the city council meetings, although it is true that a road will almost always be used "if it is there," this fact does not mean that this usage is necessary to the individual or to the public. For example, if there were three parallel roads going to the same place, it may be that there could be a demand for each road, e.g., different people would choose to drive on different roads. However, this does not mean that each road is "needed" or "necessary" to the public as a whole under the meaning of the statutes. The governing body may look at the entire system of roads, and reasonably make a judgment that a single road is no longer essential or necessary when viewing the entire transportation network.

To support its interpretation of the statutes, CISA argues there is a strong public policy to protect the public's interest in continued use of its streets,

and the public has strong rights in continued use of existing public streets. (*County of San Diego v. Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826–827 [186 P.2d 124].) CISA also maintains that the state has preempted the entire field of traffic control, and a city has only the limited powers expressly provided for in the Vehicle Code and that delegations of these powers must be strictly construed. (See Veh. Code, § 21; *Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 548 [183 Cal.Rptr. 73, 645 P.2d 124] *(Rumford)*; *Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1177–1178 [105 Cal.Rptr.2d 172].)

█ We agree with these general principles, but they are insufficient to defeat a legislative decision to close a road if the facts support that the road is unnecessary for present or prospective public use. Although " ' "the use of highways . . . [is] a common and fundamental right, of which the public and individuals cannot rightfully be deprived . . . ." ' " (*Lafayette, supra,* 91 Cal.App.3d at p. 753), the Legislature has specifically mandated that a local entity may overcome an individual's right to use a street if the street is no longer needed. (Veh. Code, § 21101, subd. (a)(1).) Thus, not all interferences with an individual's right to continue to use a public street are unlawful. Likewise, although the state has preempted the field of motor vehicle traffic regulation, a city does have the authority expressly given to it by the Legislature. (See *Rumford, supra,* 31 Cal.3d at p. 548.) Because the Legislature specifically gave a local legislative body broad discretion to close a public street if it finds the street is no longer necessary, CISA's arguments that the City's powers here are preempted are unavailing.

CISA additionally relies on a line of decisions that have held partial street closures to be invalid. (*Rumford, supra,* 31 Cal.3d 545; *Citizens Against Gated Enclaves v. Whitley Heights Civic Assn.* (1994) 23 Cal.App.4th 812 [28 Cal.Rptr.2d 451] *(Citizens)*; *Lafayette, supra,* 91 Cal.App.3d 749.) These courts did not address the issues raised here.

In *Lafayette,* the court held a city could not partially close a public street for the exclusive use of nearby residents because there is no legislative authority for a city to restrict the right to use public streets for some people and not for others. (*Lafayette, supra,* 91 Cal.App.3d at p. 754.) The court emphasized that it was *not* addressing the situation where a city completely closes a public road, noting that "courts will exercise liberality in accepting a local authority's determination that all, or part, of a street, 'is no longer needed for vehicular traffic,' and the consequent closure to *all* such traffic." (*Id.* at p. 757.) But the *Lafayette* court stated that this rule does not "allow a city to close a street, or part of it, to the state's citizens generally but not, as

in the case at bench, to its own residents or other 'exempted drivers.' "[4] (*Ibid.*)

Three years later, the California Supreme Court approved *Lafayette*'s reasoning and held the City of Berkeley had no authority to place traffic barriers on city streets permitting only local residents to use the streets. (*Rumford, supra,* 31 Cal.3d at pp. 551–552.) The court stated that Vehicle Code section 21101, subdivision (a) does not provide a city with the authority to partially close a public street, and specifically noted that Berkeley did not "claim[] that any street . . . is 'no longer needed for vehicular traffic.' " (*Rumford,* at p. 551.)[5]

The *Citizens* court similarly held the City of Los Angeles had no authority to permit traffic gates to partially block public streets. (*Citizens, supra,* 23 Cal.App.4th 812.) The city had entered into an agreement with a homeowners association to permit the association to install the gates and to permit only residents of the residential development to use those public streets. (*Id.* at pp. 814–816.) The reviewing court held the agreement essentially converted public streets into private roads and therefore was invalid because the city had not made a finding that the streets were no longer needed for vehicular traffic. (*Id.* at p. 821.) The court explained, "the [c]ity cannot . . . wave the magic wand and declare a public street not to be a public street" without "a finding that the property in question is unnecessary for present or future uses as a street." (*Ibid.*)

CISA argues that because *Rumford, Lafayette,* and *Citizens* held a partial street closing was improper if some excluded members of the public would want to use the street, we must necessarily conclude that the total closure here was improper where many members of the public want to use Sorrento Valley Road. This chain of reasoning is flawed. The *Rumford-Lafayette-Citizens* line of decisions concerned a local entity's authority to decide *which* members of the public could use a particular public street, and not the issue here involving a legislative judgment that a road has become unnecessary for the entire public. The logic of those decisions thus has no applicability here.

CISA's reliance on this court's decision in *City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847 [280 Cal.Rptr. 368] (*Poway*) is also

---

[4] The Legislature later enacted Vehicle Code section 21101.6 for the express purpose of codifying *Lafayette*'s holding. That code section provides: "Notwithstanding Section 21101, local authorities may not place gates or other selective devices on any street which deny or restrict the access of certain members of the public to the street, while permitting others unrestricted access to the street." (*Ibid.*)

[5] In response to *Rumford,* the Legislature enacted legislation to specify the extent of local authority over traffic matters and keep existing traffic control devices operational. (Stats. 1982, ch. 749, § 8, p. 2968; Stats. 1983, ch. 291, § 5, p. 867; see *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1107–1108 [72 Cal.Rptr.2d 134].)

misplaced. In *Poway,* the City of San Diego closed its portion of a major regional roadway that continued beyond its city limits. (*Id.* at pp. 851–855.) In finding that the city did not have the authority to close the road in this fashion, we noted that the city did not claim the road was "no longer needed" under Vehicle Code section 21101, subdivision (a). (*Poway, supra,* at p. 861, fn. 10.) Instead, the city justified the closure under Vehicle Code section 21101, subdivision (f) which permits a city to place certain types of traffic barriers to implement a local traffic plan. (*Poway, supra,* at p. 864.) We held this code section "should not be interpreted to allow one municipality to close its portion of a regionally significant, safely designed and maintained roadway for reasons of self interest, to the detriment of those other members of the motoring public who seek to travel the entirety of that road." (*Id.* at p. 866.) This holding—which interprets Vehicle Code section 21101, subdivision (f)—has no applicability to the issues raised in this case.

We find unsupported CISA's alternate argument that the City has previously admitted that the closed portion of Sorrento Valley Road is necessary. In its answer to CISA's original writ petition, the City admitted the truth of CISA's allegation that "Sorrento Valley Road has always been an important vehicular artery in the area that allows local traffic to avoid the merge of Interstates 5 and 805." However, the fact that drivers had previously used Sorrento Valley Road to avoid the I-5/I-805 merge does not mean the city council could not reasonably find that this street was no longer needed for vehicular traffic because of improvements to the merge area and other transportation changes in the area. Likewise, the fact that the City admitted in 2000 that it did not have the authority to close the road because it was "constrained . . . by the Vehicle Code" did not constitute a judicial admission that it could not make the necessary findings at a later time. Reasonably construed, the City's admissions reflect its recognition that before the City could close the road, it would need to comply with the applicable statutory prerequisites, which it has now done.

For similar reasons, we reject CISA's argument that the City's conclusions were improper because it ignored its staff's opinion that permanently closing the road was legally improper. Our examination of the relevant documents and city council transcripts shows that City staff noted in 2000 and 2001 that the road could not be closed *unless* the City made the necessary land use plan amendments and required statutory findings for a road closure. Moreover, to the extent a deputy city attorney had previously opined that the road could not be found to be "unnecessary" under the applicable code sections, this opinion was not binding on the city council or this court.

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Judgments affirmed. CISA to bear costs on appeal.

Nares, Acting P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied June 4, 2004, and appellants' petition for review by the Supreme Court was denied August 11, 2004.

---

*See footnote, *ante*, page 808.