Filed 11/26/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| AIRPORT BUSINESS CENTER, <br>    Plaintiff and Appellant, <br> v. <br> CITY OF SANTA ROSA et al., <br>    Defendants and Respondents. | A170967 <br><br> (Sonoma County <br> Super. Ct. No. SCV272714) |

This appeal arises out of a dispute about whether city-owned property constitutes surplus land within the meaning of the Surplus Land Act. (Gov. Code, §§ 54220 et seq.)[1] In December 2022, the City of Santa Rosa and City Council of Santa Rosa (together, "the City") adopted a resolution declaring that a property the City was using as a parking garage constituted surplus land under the Act. Airport Business Center (appellant) filed a petition for writ of mandate to set aside the resolution, which the trial court denied. Appellant contends the judgment must be reversed because the City violated the Act by designating the property as surplus land despite an ongoing need for public parking. We affirm the judgment.

---

[1] Statutory references are to the Government Code, unless otherwise specified, and we sometimes refer to the Surplus Land Act as the Act.

## STATUTORY OVERVIEW

The Surplus Land Act advances "state land use policy objectives by mandating a uniform approach to the disposition of local government land that is no longer needed for government use." (*Anderson v. City of San Jose* (2019) 42 Cal.App.5th 683, 693 (*Anderson*).) Pertinent here, the Act declares that "housing is of vital statewide importance to the health, safety, and welfare of the residents of this state," that "a shortage of sites available for housing for persons and families of low and moderate income is a barrier to addressing urgent statewide housing needs and that surplus government land, prior to disposition, should be made available for that purpose." (§ 54220, subd. (a).)

The Act requires that before a local agency may dispose of surplus government land, it must issue a Notice of Availability to affordable housing developers, among others, and negotiate in good faith with interested entities. (§§ 54222, 54223.) The term " '[l]ocal agency' " is defined broadly to include "every city, whether organized under general law or by charter," as well as counties, districts, other political subdivisions of the state, and instrumentalities "empowered to acquire and hold real property." (§ 54221, subd. (a).) With this reach, "the statute addresses the shortage of sites available for affordable housing development as a matter of statewide concern." (*Anderson*, *supra*, 42 Cal.App.5th at p. 693.)

The present appeal arises from a dispute about whether a specific property constitutes surplus land, a term that section 54221, subdivision (b)(1) (section 54221(b)(1)) of the Act defines: " 'Surplus land' means land owned in fee simple by any local agency for which the local agency's governing body takes formal action in a regular public meeting declaring that the land is surplus and is not necessary for the agency's use."

2

The statute then elaborates, "Land shall be declared either 'surplus land' or 'exempt surplus land,' as supported by written findings, before a local agency may take any action to dispose of it consistent with an agency's policies or procedures. A local agency, on an annual basis, may declare multiple parcels as 'surplus land' or 'exempt surplus land.' " (*Ibid.*)

The Act provides some assistance in explicating its definition of "surplus land." The statute defines an " 'agency's use' " but only in very general terms. (§ 54221, subd. (c) (§ 54221(c)).) " '[A]gency's use' shall include, but not be limited to, land that is being used, or is planned to be used . . ., for agency work or operations." (*Id.*, at subd. (c)(1).) It does "not include commercial or industrial uses or activities," nor "[p]roperty disposed of for the sole purpose of investment or generation of revenue." (*Id.*, at subd. (c)(2)). The Act also distinguishes surplus land from exempt surplus land, the latter being not subject to the same dispositional requirements. (See, e.g., § 54221, subd. (b)(4).) But we need not recount the types of property that qualify as exempt surplus land (§ 54221, subd. (f)), as there is no dispute that the property at issue in this case is not exempt.

We also note that the statutory definition of surplus land was substantially different prior to January 2020, when amendments to the Act that were adopted in 2019 went into effect. (Stats. 2019, ch. 664, §2 (Assem. Bill No. 1486), eff. Jan. 1, 2020 (the 2019 Amendment).) In the 2019 version of the Act, surplus land was defined in former section 54221, subdivision (b), which read, in its entirety: "As used in this article, the term 'surplus land' means land owned by any local agency, that is determined to be no longer necessary for the agency's use, except property being held by the agency for the purpose of exchange." The 2019 Amendment amended this subdivision and added section 54221(c), defining "agency's use."

3

## FACTUAL BACKGROUND

In 2016, the City adopted a Housing Action Plan, which includes a program to identify public land that can potentially be used for housing development. As part of that process, the City conducted a review of city-owned downtown parking facilities, and in 2019 it commissioned a study to determine how frequently the public was using parking spaces in the downtown area.

The 2019 parking study's analysis of downtown parking capacity addressed street and off-street parking, both private and public. It included data collected from multiple locations on days and times thought to reflect peak usage. Walker Consultants, the company that prepared the study, concluded from the data that there "may be an opportunity to build housing and other commercial uses on existing public parking facilities in Downtown Santa Rosa."

Walker also, during this time period, conducted a site survey and prepared a report on the overall condition of five city-owned public parking structures, including a property commonly referred to as Garage 5. Garage 5 was rated as being in poor to fair condition, while the condition of the City's other public parking structures ranged from fair to good. Walker reported that major conditions of the Garage 5 property included "floor slab cracks, delamination, concrete spalls, [and] sealant and waterproofing deterioration," and it recommended almost $3 million worth of necessary repairs and capital improvements for Garage 5. Garage 5 was not only the oldest, but also the smallest of the City's parking garages, with 199 spaces.

By September 2021, the City's plan "to bring more housing into the downtown area" was well underway. Jill Scott, the City's real property manager, made presentations about the housing plan at two public meetings,

4

mentioning the 2019 Amendment to the Surplus Land Act.  Scott reported that one parking asset was being redeveloped pursuant to the Act's new process for disposing of city-owned property, and that the City had identified three other properties for potential disposition, including Garage 5.

In January 2022, the City Council held a public meeting to conduct a study session regarding the City's potentially surplus downtown assets.  The purpose of the session was to share information about these assets, as a step toward identifying property that could be better used for housing.  The session resulted in a directive from the City Council to make the Garage 5 property available for development as affordable housing pursuant to the Surplus Land Act.

On April 12, 2022, the City Council held its regular meeting.  One matter on the public agenda was a report and request for a resolution declaring Garage 5 as nonexempt surplus land, subject to the retention of some public parking on the site.  City staff presented analyses in support of the resolution, explaining, among other things, that the City had determined it did not have a public use for the property other than the continued need for some public parking, and that beneficial use of the property could be maximized if the City were to dispose of it, conditioned on retaining 75 public parking spaces on the property.  Staff also explained that, because Garage 5 does not meet the statutory definition of exempt surplus land, the City would need to follow the Act's procedure for disposing of surplus land.

Some local business owners objected to the proposed resolution, including appellant, who owns multiple downtown properties.  Appellant objected that removing Garage 5 would cause appellant tremendous financial hardship and argued that another site would be a better location for housing.  The owner of property immediately adjacent to Garage 5 also complained

that property owners within the district had funded construction of the parking structure.

The City Council did not take formal action on the Garage 5 proposal at its April 2022 meeting. Instead, the City conducted additional study sessions throughout 2022. For example, an August 2022 session focused on an updated parking study completed two months earlier. In response to the 2019 parking study, the City had implemented various recommendations to address parking in the downtown area, and the updated study was commissioned to "document changing parking conditions and utilization." City staff incorporated the results of the 2022 parking study in their subsequent presentations to the City Council, and in November 2022, Walker Consultants sent the City a memorandum containing key findings from the study. These included: between October 2021 and April 2022, only 30 percent of downtown public parking spaces were being utilized; adjusting parking demand to account for conditions prior to the COVID pandemic, there would still be an estimated 2,585 unused parking spaces in the downtown area; future parking utilization for the overall study area was projected to be 48 percent; and if the City were to sell three parking facilities, including Garage 5, the remaining parking facilities could accommodate parking demand.

On December 6, 2022, the City Council passed a resolution designating Garage 5 as surplus land under the Act (the Resolution). The Resolution was adopted at the conclusion of a public meeting, after staff discussed the bases for their recommendations and the City Council heard public comments. The Resolution sets forth formal findings made by the City Council, including that the Garage 5 property: "is 'surplus land' as defined by the Act"; "does not fit within the definition of 'exempt surplus land' as set forth in the Act";

6

and "is not necessary for the City's use, provided that at least 75 of the public parking stalls are retained on the Property as a condition of the sale or lease of the Property."

The Resolution summarizes facts that resulted in the surplus land designation: the City owns the land in fee simple; the land has been improved with a three-level parking garage containing 199 public parking stalls; the City "has determined that it does not have a public use for the Property" and "could maximize the beneficial use of the Property to help meet housing goals, if the City were to dispose of the Property, so long as any such disposition or long term lease of the Property is conditioned upon retaining some public parking stalls as part of any future development."

## PROCEDURAL BACKGROUND

In February 2023, appellant filed a petition for writ of mandate and complaint for declaratory relief,[2] seeking to set aside the designation of Garage 5 as surplus property under the Act and to bar the City from disposing of it "as such." Appellant alleged that the Resolution is invalid because Garage 5 does not meet the statutory definition of surplus land, and thus the City "did not, and could not, make the requisite findings under the Act to declare the Garage surplus."

Appellant based its claim on the following factual allegations: Prior to the COVID-19 pandemic, Garage 5 had the highest usage rate of any city-

---

[2] In its petition, appellant sought relief under two distinct provisions of the Code of Civil Procedure, citing section 1085 and section 1094.5. Subsequently appellant clarified that it was seeking traditional rather than administrative mandamus. " 'Ordinary mandate under . . . section 1085 is used to review ministerial acts, quasi-legislative acts, and quasi-judicial decisions which do not meet the requirements for review under . . . section 1094.5.' " (*Napa Valley Unified School Dist. v. State Bd. of Education* (2025) 110 Cal.App.5th 609, 624.)

owned garage and generated significant revenue. In April 2022, the City considered designating Garage 5 as surplus but withdrew the proposed designation after appellant and others objected. When the City revisited the issue and made the designation, it relied on short-term data as evidence of depressed parking demand. And the garage, which is neither vacant nor undeveloped land, remains needed for ongoing public use.

In February 2024, after the administrative record was certified, appellant filed an opening brief in support of its petition. Appellant argued that the record shows the City "engaged in a legal fiction," declaring Garage 5 to be surplus land in order to "pursue its own aims of redevelopment." According to appellant, the allegedly improper designation of Garage 5 as surplus should be set aside based on evidence that (1) Garage 5 is the most "intensely-used parking garage" in the city; (2) the administrative record is "replete" with the City's admissions that the garage is not "in fact" surplus; and (3) the Resolution's requirement to provide for public parking "on a go-forward basis," proves definitively that Garage 5 is not surplus property.

Opposing the petition, the City argued it acted within its discretion as a charter city by deciding to sell Garage 5 to "facilitate the development of housing" in downtown Santa Rosa. Designating the land as surplus property under the Act was an initial procedural step taken in full compliance with the Act, the City argued, and was based on studies, evaluations, and feedback from public meetings conducted throughout 2022. Through that process, the City determined that parking demand in the downtown area had declined, that Garage 5 needed substantial repairs to prolong its useful life, and that the City's "parking fund balance" was insufficient to pay for those needed repairs.

8

The superior court held a hearing on the writ petition and, on May 31, 2024, denied it in a written order (the May 2024 order). The court found that the extensive administrative record showed the City's actions were not arbitrary or capricious; the decision to declare Garage 5 surplus property was not without evidentiary support or procedurally unfair; and appellant did not show the City had failed to comply with the Act.

After the court issued its May 2024 order, appellant filed an ex parte request for a temporary stay, which the court granted in part, staying its decision until August 9. On July 16, 2024, appellant filed a notice of appeal, characterizing the May 2024 order as a judgment after court trial.[3] Thereafter, appellant filed a petition for writ of supersedeas, requesting a stay of the May 2024 order, which this court denied.

## DISCUSSION

"The standard of review for traditional mandamus (Code Civ. Proc., § 1085), calls for the court to determine whether ' "the agency's decision was arbitrary, capricious or entirely lacking in evidentiary support, contrary to established public policy, unlawful or procedurally unfair." ' [Citation.] Under this deferential standard of review, the court's role is to 'ensure that the administrative agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choices

---

[3] Appellant argues *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643 (*Meinhardt*) holds that "an order on a writ of mandate is not itself a final judgment," but the May 2024 order is nevertheless a final judgment because this appeal was filed before *Meinhardt* was decided. We reject this unsupported contention but note that the trial court did not issue anything labelled a "judgment," and as *Meinhardt* confirms, the dispositive order in a writ proceeding may be "sufficiently final to constitute a judgment." (*Meinhardt*, at pp. 654–655, 658–659.) Accordingly, we deem the May 2024 order a judgment.

9

made, and the purposes of the enabling statute." (*Ruegg & Ellsworth v. City of Berkeley* (2021) 63 Cal.App.5th 277, 298 (*Ruegg*).)  On appeal, we apply "the same standard of review as the trial court," and the dispositive question is the same as it was below:  whether the City abused its discretion by issuing a resolution declaring Garage 5 to be nonexempt surplus property under the Act.  (*Ibid.*)

Contending the City did abuse its discretion, appellant argues (1) the Garage 5 property does not fall within the statutory definition of surplus land; (2) the Resolution is not supported by the evidence; and (3) the designation of Garage 5 as surplus property is not supported by written findings.

## I.  Statutory Definition of Surplus Land

The interpretation of a statute and its application to undisputed facts present questions of law, subject to independent review by this court. (*California Charter Schools Assn. v. City of Huntington Park* (2019) 35 Cal.App.5th 362, 369; *CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 280.)  " 'In construing a statute, . . . [w]e look first to the words of the statute, which are the most reliable indications of the Legislature's intent. . . .' [Citation]  'If the statutory language is unambiguous, then its plain meaning controls.  If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83.)

The definition of surplus land in section 54221(b)(1) consists of two elements, only one of them at issue here.  First, the land must be "owned in fee simple by any local agency," and second, the local agency's governing body

10

must take "formal action in a regular public meeting declaring that the land is surplus and is not necessary for the agency's use." (§ 54221(b)(1).) Appellant does not dispute the first element, that the City owns the Garage 5 property in fee simple.

Appellant argues the requirement that an agency must take formal action to declare land as surplus is substantive, not just procedural, and the essential predicate for declaring land to be surplus is that it must be not "necessary" for the "agency's use." (§ 54221(b)(1).)[4] Appellant construes this requirement to mean that if land is serving a public use, then the land is—by definition—necessary and cannot constitute surplus land. Applying this construction here, appellant posits that the public needs parking, and that providing parking constitutes a legitimate public use. (Citing *City of Whittier v. Dixon* (1944) 24 Cal.2d 664, 667–668; *Federal Construction Co. v. Ensign* (1922) 59 Cal.App. 200, 209.) Therefore, appellant reasons, a city-owned

_____

[4] In its opening brief, appellant relies on an outdated definition of surplus land, anchoring its statutory argument to language in former section 54221, subdivision (b) that defined surplus land as "no longer necessary for the agency's use." Appellant concedes this error in its reply brief but argues its misstep is irrelevant because there is no substantive difference between the superseded language and the current statutory language with regard to the requirement that the City must find a property is not "necessary for the [City's] use" before it can deem the property surplus. (*Ibid.*) Although appellant fails to acknowledge that other significant changes to the statutory definition were implemented by the 2019 Amendment, we accept that for purposes of *this* appeal the distinction between "no longer necessary" and "not necessary" is immaterial.

Thus, we reject the City's contention that appellant has forfeited this appeal by relying on the former statute. We note that the City also appears to be relying on the former definition of surplus land when it quotes *Anderson, supra*, 42 Cal.App.5th at p. 717 for the proposition that the determination whether " 'land is deemed 'surplus' is entirely within the local government's discretion.' " (See *Anderson*, at p. 694, fn. 2 [court was reviewing appealed order under the former statute].)

11

property that is being used as a public parking garage cannot meet the definition of surplus land when there is an ongoing need for parking.

Even accepting that the statutory definition of surplus land has a substantive component (*Anderson*, *supra*, 42 Cal.App.5th at p. 713), we find appellant's interpretation of section 54221(b)(1) to be seriously flawed, conflating what serves a public use with what is necessary to a public agency.

Appellant bases its claim of error on language in section 54221(b)(1) requiring the agency to make a formal finding that the land in question is not "necessary" for the "agency's use." By its plain meaning, the word "necessary" connotes something that is absolutely needed, indispensable or essential,[5] and the Legislature has defined "agency's use" with reference to property the agency uses or has expressed an intent to use to conduct its operations or do its work (§ 54221(c)). Importantly, the Legislature did not otherwise address when property is necessary for an agency's use, which does not appear to be an oversight but a recognition that an agency's assessment of its current needs could depend on a variety of potentially relevant factors. Thus, as a substantive requirement, this aspect of the statutory definition means that property becomes subject to the dispositional requirements of the Act once the agency makes a formal decision that the property is not essential for its continued work and operations, and that the property does not constitute exempt surplus land. (§ 54221(b)(1).)

Appellant attempts to impose an additional substantive restriction on the agency's power to designate surplus land, which focuses on whether the

---

[5] See, for example, Webster's 11th New Collegiate Dictionary (2003) p. 828; Black's Law Dictionary (12 ed. 2024). See also *Citizens for Improved Sorrento Access, Inc. v. City of San Diego* (2004) 118 Cal.App.4th 808, 815–816 (*Citizens*), which quotes additional dictionary definitions to the same effect.

land is serving a public purpose. Appellant reads this restriction into section 54221(b)(1) by equating the word "necessary" with a broad concept of public use, arguing in essence that if there is a need for public parking then a property that is used to provide it cannot be deemed unnecessary. Under appellant's reading of the statute, once an agency has identified a specific property for a particular use, the property cannot be declared surplus absent a showing that the underlying public need no longer exists or that the property is incapable of addressing it.

We reject appellant's argument as untethered to the statutory language. Section 54221(b)(1) does not exclude from the definition of "surplus land" property that is being used for a public purpose, nor does it equate a property that is "necessary for the agency's use" with a property that is serving the needs of the populace. The statutory language does require the agency to assess whether a specific property is necessary for its own work or operational needs. (§ 54221, subd. (c).) And that assessment may involve consideration of how the property is being used by the public, but the determination that a city-owned asset constitutes surplus land under the Act does *not* require the agency to find that land is of no use to the public.

Neither party cites authority construing the current statutory definition of surplus land, nor do we find a case directly on point.[6] But we find support for our conclusions in *Citizens*, *supra*, 118 Cal.App.4th 808,

---

[6] Both parties rely on *Anderson*, *supra*, 42 Cal.App.5th 683, which provides relevant background about the Act and its evolving emphasis on the statewide need for affordable housing. But the issue in *Anderson* pertained to whether a city's policy for the sale of surplus land was preempted by the affordable housing restrictions in the Act, not whether a specific asset constituted surplus land, and *Anderson* was decided under a former version of the Act with a different definition of surplus land. (*Anderson*, at p. 694, fn. 2.)

13

which construes similar language appearing in a different statute. In *Citizens*, the plaintiff challenged a city's resolution to close a public street based on a finding that the street was no longer "necessary." (*Id*. at p. 813.) Statutory provisions governing the street closure process provided that the local legislative body had to find a street was " 'unnecessary for present or prospective public use,' " and was " '[n]o longer needed for vehicular traffic.' " (*Id*. at pp. 813–814.) The plaintiff equated the terms " 'unnecessary' " and " '[n]o longer needed' " with concepts of public use and demand, arguing that if people wanted to use the street for vehicular traffic, the city had no discretion to close it. (*Id*. at p. 815.) The appellate court rejected this argument for two related reasons. First, plaintiff ignored the plain meaning of the terms " 'unnecessary' " and " '[n]o longer needed,' " which connote something that is not essential or required. Thus, the pertinent inquiry was whether the street was essential for public use, or required for vehicular traffic, not whether some members of the public wanted to use the land for that purpose. Second, the plaintiff ignored other pertinent statutory language, which made it clear that the determination was to be based on the local legislative body's " 'opinion' " as to whether the street was necessary. (*Id*. at pp. 815–816.)

Appellant's proposed construction of section 54221(b)(1) suffers from the same flaws. By equating the word "necessary" with something that is merely useful, appellant ignores not just the plain meaning of that word itself, but also other language in section 54221(b)(1), especially the related explication of "agency's use," which suggests that the surplus land determination turns on whether a property is essential for the agency's operational needs. Appellant also attempts to add a restriction that would prohibit an agency from disposing of its own property, if that property is

14

currently used for a public purpose. We reject this construction, as our role is " 'to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does.' " (*Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 807.)

Appellant's contrary argument relies on inapposite cases like *Whittier*, *supra*, 24 Cal.2d 664. In rejecting a constitutional challenge to the Vehicle Parking District Act of 1943, the *Whittier* court observed that the provision of parking spaces can serve a public purpose. (*Id*. at p. 667.) But the issue we address here has nothing to do with whether the City or its parking district could properly provide public parking. We are concerned with whether a particular property currently used as a parking lot can be declared surplus under the state's Surplus Land Act.

Our goal when construing the Surplus Land Act is to effectuate the intent of the Legislature and to promote, rather than defeat, the statutory purpose. (*Citizens*, *supra*, 118 Cal.App.4th at p. 816.) The purpose of the most recent amendments to the Surplus Land Act is to advance this state's affordable housing priorities. (See *Anderson*, *supra*, 42 Cal.App.5th at p. 711.) Despite a city's "readily identifiable interest in the disposition of its real property," the "well-documented" shortage of affordable housing options "justif[ies] statewide application of the Act's affordable housing priorities." (*Ibid*.) Appellant's proposal to impose an additional restriction on the agency's ability to designate land as surplus would not only change the scope of the statutory definition, it would also potentially undermine the purpose of the Act by erecting a substantial roadblock for agencies considering whether to make underutilized assets available for the development of affordable housing.

15

For all these reasons, appellant's statutory argument fails. Because we agree with the City regarding the statute's text and purpose, we find it unnecessary to address the City's additional argument that appellant's statutory interpretation would result in an unconstitutional encroachment on the "home rule" authority of charter cities.

## II. Record Evidence

Mandate relief is available when an agency's decision is not supported by the evidence. " 'In determining whether evidentiary support is present in a traditional mandamus action, the applicable standard of review is the substantial evidence test." (*Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1177.) We do not reweigh the evidence and must view it in the light most favorable to the challenged decision. (*Ibid*.) In this context, substantial evidence has been defined as "relevant evidence that a reasonable mind might accept as adequate support for a conclusion." (*Ibid*.)

The lengthy administrative record, which appellant largely ignores, demonstrates that the City undertook a comprehensive study before it issued the Resolution declaring Garage 5 to be surplus property. The information gathered by the City showed, among other things, that all of the City's parking garage assets were underutilized, that the Garage 5 structure needed extensive repairs, and that the City's other parking facilities could meet the demand for public parking if the Garage 5 property was sold. We conclude this evidence provides adequate support for the conclusion that the property constitutes surplus land, within the meaning of the Act.

Appellant offers several theories in an effort to show otherwise. We note at the outset that these arguments are inconsistent with our standard of review because appellant ignores most of the administrative record, relying

16

on snippets of evidence isolated from their context. (See, e.g., *Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1218 [substantial evidence review may not be confined "to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment"]; *Ogundare v. Department of Industrial Relations* (2013) 214 Cal.App.4th 822, 829–830 [reviewing court may not overturn decision supported by substantial evidence "merely because a contrary finding would have been equally or more reasonable"].) Nevertheless, we briefly address appellant's points.

Appellant posits that the City's finding is contradicted by the Resolution itself. According to this argument, the condition in the Resolution requiring that any future development of the property include some parking proves that the City needs Garage 5 for public parking. This argument fails on multiple levels. First, the 75 parking spaces to be retained are less than half the number of spaces currently in Garage 5, so even if the City were to admit a need for 75 spaces at that location, that would not mean the City needed to continue using this property in its current configuration. Second, even setting aside the difference between 75 and 199 parking spaces, appellant's logic is unsound. The City found that Garage 5 "is not necessary for the City's use, provided that at least 75 of the public parking stalls are retained." That finding does not tell us whether, if 75 parking stalls are *not* retained, the property would be necessary for the City's use. That question remains logically undetermined. Perhaps the City wants, but does not need, the 75 parking spots. Factually, that is precisely what the record evidence shows: the City does not *need* any parking stalls on the Garage 5 property because unused parking capacity at other public garages would suffice to meet the demand for parking without Garage 5, but local business owners expressed a desire for parking at that specific location. As the trial court

17

observed, appellant has pointed to nothing in the Surplus Land Act that precludes a city from including a condition in its resolution declaring a property to be surplus land. Nor do we find anything arbitrary, irrational or otherwise improper in the future parking condition the City chose to impose under the circumstances of this case.

Appellant's second argument is that City personnel admitted the City needs public parking at the Garage 5 property. As support for this argument, appellant recounts five statements made by City staff or council members at public meetings. Only one statement pertains specifically to Garage 5, but all involve general acknowledgements that public parking is needed in Santa Rosa. We reject appellant's mischaracterization of these remarks as concessions that Garage 5 is not surplus property. As we have explained, an ongoing general need for public parking does not preclude a city from finding that a specific parking garage is unnecessary. Here, isolated statements by City representatives that show the City remained cognizant of a general need for parking do not compel a finding that the Resolution is invalid. To the contrary, these statements reinforce our conclusion that the City did not abuse its discretion, but instead took account of the benefits of public parking before concluding Garage 5 is not necessary for the City's use.

Next, appellant contends that evidence the City identified some public parking garages as potential locations for housing development before those assets were designated as surplus property proves the City violated the Act. According to this argument, the Act is designed to apply only after the agency realizes it has land that is no longer necessary for public use, and the City improperly "worked backwards" by first asking which of its properties were suitable for redevelopment. Appellant's assumptions about how the Act is designed to apply, and when an agency may begin to consider the

18

requirements of the Act, are unsupported by legal analysis or citation to the statute. Thus, we may disregard them. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287; see also *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 ["failure to provide legal authorities to support arguments forfeits contentions of error"].) In any event, to the extent appellant is suggesting that the City violates the Act by pursuing its housing policy goals—goals that the Act itself aims to promote—we disagree.

Finally, appellant contends that the 2022 parking study is the only evidence the City has offered to support designating Garage 5 as surplus land, and that this study is not substantial evidence because it does not "counteract the legal effect" of the condition requiring at least 75 parking stalls to be retained on the property. Appellant also posits that the City should not be permitted to rely on the 2022 parking study because it was not cited in the Resolution, but this novel waiver theory is inconsistent with our substantial evidence standard of review. Moreover, and most importantly, appellant is wrong to characterize the updated parking study as the only evidence to support the surplus land designation. As summarized in our factual background, the 12,000-page administrative record documents a lengthy and detailed process that culminated in the City's reasonable determination that Garage 5 is not necessary for the City's use.

## III. The Requirement To Make Findings

Finally, appellant contends the City abused its discretion by not supporting its surplus land designation with written findings. (Citing § 54221(b)(1).) According to appellant, the City violated this statutory requirement because the Resolution contains only a single substantive finding—that Garage 5 is "not necessary for the City's use"— and this finding is too conclusory to satisfy the statutory standard. We disagree.

19

The pertinent sentence in section 54221(b)(1) states that land "shall be declared either 'surplus land' or 'exempt surplus land,' as supported by written findings . . . ." The statute does not elaborate on what, exactly, must be set forth in such written findings, though we might reasonably expect them to provide the factual predicate for a declaration the property is, in this case, surplus land.

The findings here amply meet that requirement. They are set forth in a series of paragraphs each beginning with the word "WHEREAS." Appellant ignores them without explanation, and notwithstanding that the trial court quoted many of them in the order denying appellant's petition. For our purposes, it is enough to note that, as our background summary reflects, the Resolution sets forth that the City owns the land in fee simple; the land has been improved with a parking garage containing 199 public parking spaces, and the City has determined it "could maximize the beneficial use of the Property to help meet housing goals, if the City were to dispose of the Property" while "retaining some of the public parking stalls as part of any future development." The Resolution follows these findings with the City Council's formal findings that are expressly required by the Act, namely that the property "is 'surplus land' as defined by the Act," "does not fit within the definition of 'exempt surplus land' as set for in the Act," and "is not necessary for the City's use, provided that at least 75 of the public parking stalls are retained on the Property as a condition of the sale or lease of the Property."

Appellant cites no authority that would have us depart from the deferential standard courts normally apply in reviewing an agency's findings when ruling on a petition for writ of mandate. (See *Ruegg, supra*, 63 Cal.App.5th at p. 298.) Once again, appellant falls short of proving any abuse of discretion entitling it to mandate relief.

20

# DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Airport Business Center v. City of Santa Rosa et al.* (A170967)

Trial Court:      Sonoma County Superior Court

Trial Judge:      Hon. Patrick M. Broderick

Counsel:      Miller Starr Regalia, Matthew C. Henderson for Plaintiff and Appellant

Best Best & Krieger, A. Patricia Ursea, Zachary Scalzo, Ethan John Walsh, Helen Yvonne Byrens; Teresa L. Stricker, City Attorney and Ashle Tara Crocker for Defendants and Respondents

Richards, Watson & Gershon, Craig A. Steele for League of California Cities and California Special Districts Association as Amicus Curiae on behalf of Defendants and Respondents